IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS VARGAS-TORRES, et al.,

    Plaintiffs

    v.

PEDRO TOLEDO-DÁVILA, et al.,

    Defendants

CIVIL NO.: 07-2002 (FAB/MEL)

**OPINION AND ORDER**

**I.    PROCEDURAL BACKGROUND**

On October 22, 2007, plaintiffs: (1) Carlos Vargas-Torres ("Vargas-Torres"), Miriam Vargas-Sepúlveda ("Vargas-Sepúlveda") and the conjugal legal partnership constituted by them (collectively, "the Vargas"); (2) Noel Pietri-Figueroa ("Pietri-Figueroa"), Marylin Vargas-Vargas and the conjugal legal partnership constituted by them (collectively, "the Pietris"), on their behalf and in representation of their minor son Carlos Pietri-Vargas ("Pietri-Vargas"); and (3) Ricardo Vargas-Vargas ("Vargas-Vargas"), on his behalf and in representation of his minor son Ricardo José Vargas-Tollinche ("Vargas-Tollinche") (collectively, "plaintiffs") filed this action pursuant to 42 U.S.C. §§ 1983 and 1988 ("Section 1983" and "Section 1988", respectively) against: (1) Mr. Pedro Toledo-Dávila ("Toledo-Dávila"), Superintendent of the Puerto Rico Police Department; (2) Sergeant José Figueroa ("Figueroa"); (3) Agent José M. Alago-Feliciano ("Alago-Feliciano"); (4) Agent Robert Martínez ("Martínez"); (5) Agent Norberto Santiago-Vargas ("Santiago-Vargas"); (6) Mr. Peter Vargas-Vargas; and (7) unknown individuals and entities (collectively, "defendants"). All individual defendants are being sued in their personal and individual capacities. The complaint alleges violations to plaintiff's rights under the Fourth, Eight

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

and Fourteenth Amendments to the U.S. Constitution, as well as claims under the Constitution and laws of the Commonwealth of Puerto Rico. Docket No. 2

On December 21, 2007, co-defendants Toledo-Dávila, Figueroa, and Martínez moved to dismiss the complaint for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). Docket No. 8. In particular, the request for dismissal alleges that: (1) said co-defendants are entitled to qualified immunity; (2) no supervisory liability attaches to co-defendants Toledo-Dávila and Figueroa under Section 1983; (3) the complaint fails to state claims of conspiracy and "emotional distress" under Section 1983; (4) the complaint fails to state a claim of substantive due process violation under the Fourteenth Amendment to the U.S. Constitution; (5) the complaint fails to state an Eight Amendment claim; and (6) pendent claims should be dismissed without prejudice in light of the fact that there are no valid federal claims against said co-defendants. Id. Plaintiffs opposed the request for dismissal on January 25, 2008. Docket No. 14.

## II.  MOTION TO DISMISS UNDER FED.R.CIV.P. 12(B)(6).

When considering a motion to dismiss under Rule 12(b)(6) the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . " Id.

An evaluation of the merits of a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). Dismissal under Rule 12(b)(6) is

2

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

appropriate if the facts alleged, taken as true, do not justify recovery. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). Thus, a dismissal for failure to state a claim can only be upheld if, after giving credence to all well pleaded facts and making all reasonable inferences in the plaintiff's favor, the factual averments do not justify recovery on some theory asserted in the complaint. Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999).

In order to survive a motion to dismiss, plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in plaintiff's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3

Recently, the Supreme Court held in Bell Atl. Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007), that in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "a plausible entitlement to relief." Rodríguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting Twombly, 127 S.Ct. at 1967). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.'" Torres v. Bella Vista Hospital, Inc., 523 F.Supp.2d 123, 133 (D.P.R. 2007) (quoting Twombly, 127 S.Ct. at 1965). The First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to

3

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

relief." Rodríguez-Ortíz, 490 F.3d at 94-95. "Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Bella Vista Hospital, Inc., 523 F.Supp.2d at 133.[1]

### III.   LEGAL ANALYSIS

    **A.   Section 1983 claims against co-defendants Toledo-Dávila, Figueroa and Martínez for violation to plaintiffs' rights under the Fourth, Eight and Fourteenth Amendments to the U.S. Constitution.**

Plaintiffs bring claims under Section 1983 for the alleged violation of their constitutional rights under the Fourth, Eight and Fourteenth Amendments to the U.S. Constitution. Co-defendants Toledo-Dávila, Figueroa and Martínez request dismissal of said claims alleging that they are entitled to qualified immunity. Furthermore, Toledo-Dávila and Figueroa also claim that liability under Section 1983 can not be imposed upon them under a theory of *respondeat superior* and that they did not participate or were personally involved in the acts described in the complaint. Docket No. 8.

In opposing the request for dismissal, plaintiffs assert that Toledo-Dávila's and Figueroa's liability as supervisors is premised in: (1) their actual or constructive knowledge about the alleged existence of abusive policies and practices that subjected citizens to unreasonable searches, seizures, false arrests and false accusations; (2) their deliberate and /or reckless indifference and gross negligence in adequately and competently training, supervising and disciplining the police officers

---

[1] Several courts have applied the plausibility standard announced in Twombly and applied in Margo Caribe, Inc. to cases involving claims brought under Section 1983. See e.g., Alvarado-Sánchez v. First Hosp. Corp., No. 07-1272, 2008 WL 141756 (D.P.R. Jan 11, 2008); Marcano-Betancourt v. Puerto Rico, No. 06-1400, 2007 WL 2245740 (D.P.R. Aug. 1, 2007); Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (applying the plausibility standard in the context of a motion to dismiss Iqbal's Section 1983 claims based on qualified immunity); Watts v. Florida Int'l Univ., 495 F.3d 1289, (11th Cir. Aug.17, 2007) (applying Twombly's standard to a Section 1983 action for termination from a hospital practicum which ultimately precluded receipt of a master's degree).

4

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

involved in the acts alleged in the complaint; and (3) their failure to ensure that the policies, practices and customs followed by the police of the Mayagüez area are executed within constitutional parameters. Docket No. 14, at 14-15. Plaintiffs also assert that co-defendants Toledo-Dávila, Figueroa and Martínez are not entitled to qualified immunity because plaintiffs' constitutional rights against the unreasonable or illegal searches, seizures, false arrests and false accusations were clearly established by the time the events alleged in the complaint occurred, and because a reasonable official situated in their position would have understood that said actions violated plaintiff's constitutional rights. Id., at 18-21.

### 1. Standard for a Section 1983 claim.

Section 1983 provides in its pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

The very purpose of this section was to interpose the federal courts between the States and the people, as guardians of the people's federal rights. Mitchum v. Foster, 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Section 1983 is not in itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred. Rodríguez García v. Municipality of Caguas, 354 F.3d 91, 99 (citing Baker v. McCollan, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)); Local Union v. Massachusetts, 377 F.3d at 75 (1st Cir. 2004).

It is well settled that in order for a claim to be cognizable under § 1983, the complaining

5

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

party must allege that: (1) the conduct complained of was committed by a person acting under color of law; and (2) this conduct constitutes a deprivation of a constitutional right or a federal statutory right. See Parratt v. Taylor, 451 U.S. 527, 536, 101 S.Ct. 1908 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662 (1986); Martínez-Rodríguez v. Colón-Pizarro, 54 F.3d 980 (1st Cir. 1995); Martínez-Vélez v. Simonet, 919 F.2d 808, 810 (1st Cir. 1990); Vicenty Martell, 48 F.Supp. 2d 81, 89 (D.P.R. 1999).

This second prong has two aspects: (1) there must have been an actual deprivation of the plaintiff's federally protected rights; and (2) there must have been a causal connection between the defendant's conduct and the deprivation of the plaintiff's federal rights. Gutiérrez-Rodríguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Voutour v. Vitale, 761 F.2d 812, 819 (1st Cir. 1985).

In turn, this second element of causal connection requires that the plaintiff establish: (1) for each defendant, that the defendant's own actions deprived the plaintiff of his/her protected rights, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018 (1978); Gutiérrez-Rodriguez, 882 F.2d at 562 (1989); Figueroa v. Aponte-Roque, 864 F.2d 947, 953 (1st Cir. 1989); and (2) that the defendant's conduct was intentional, Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986), grossly negligent, or amounted to a reckless or callous indifference to the plaintiff's constitutional rights.  See Gutiérrez-Rodríguez, 882 F.2d at 562.

In order to determine whether plaintiff's Section 1983 claims are valid and survive the request for dismissal, the court should first determine whether plaintiffs have alleged that Toledo-Dávila, Figueroa and Martínez were acting under color of law and whether their actions constitute

6

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

a deprivation of plaintiffs' constitutional and/or federal statutory rights. See Parrat, 451 U.S. at 536, *overruled on other grounds by* Daniels v. Williams, 447 U.S. at 330-31.

Plaintiffs allege in the complaint that defendants acted under color of law within the meaning of Section 1983. Docket No. 2, at 4, ¶¶ D-F. In particular, the complaint reads that "these defendants acted toward plaintiffs under color of the statutes, ordinances, customs, and usage of Puerto Rico and the Police Department." Id. Therefore, the first prong of the test has been met.

With respect to the second prong of the test, it is clear that the Constitution of the United States protects citizens from unjustified arrests and/or detentions and from acts of police brutality. See Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) ("The right to be free from unreasonable seizure (and, by extension, unjustified arrest and detention) is clearly established in the jurisprudence of the Fourteenth Amendment (through which the Fourth Amendment constrains state action). The right to due process of law (and, by extension, to be free from police brutality) is likewise clearly established under the Fourteenth Amendment (through which the Fifth Amendment constrains state action)"). The violation of these rights, among others, is precisely what plaintiffs are claiming in this case. For instance, the complaint asserts, among other constitutional violations, that defendants, without due process of law: (1) conducted unlawful searches and seizures on defendants and their properties; (2) unjustifiedly detained, arrested, incarcerated and filed false charges against plaintiffs; (3) deprived plaintiffs of their right to possess, use and enjoy their properties (guns and residences); and (4) violated plaintiffs' constitutional right to dignity and privacy, particularly when Marylin Vargas-Vargas was exposed naked to defendants. Docket No. 2, ¶¶ 38, 40, 44, 46, 48, 52, 54, 56-59.

7

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

After reviewing the facts alleged in the complaint and taking them as true (as the court must for purposes of the motion to dismiss currently pending), and indulging in all reasonable inferences in plaintiffs' favor, the court concludes that the same are sufficient to state valid claims of violation to plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the Constitution, among others.

The second prong, however, also involves a requirement of showing that Toledo-Dávila's, Figueroa's and Martínez's own actions and conduct were grossly negligent, reflected a reckless disregard or callous indifference and were causally connected to the deprivation of these rights to plaintiffs. See Gutiérrez-Rodríguez, 882 F.2d at 562; Monell, 436 U.S. at 694, n. 58 (1978). Under Section 1983, liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984). In order to impose personal involvement liability, a plaintiff must establish an affirmative link between the deprivation of rights asserted by plaintiff and the defendant. Suárez-Cestero v. Pagán Rosa, 198 F.Supp.2d 73, 94 (D.P.R. 2002) (quoting Lipsett I v. University of Puerto Rico, 637 F.Supp. 789, 800 (D.P.R. 1986)). Said affirmative link may be proved by showing that defendant performed certain acts which either supported, encouraged or acquiesced the conduct. Id. When there are no allegations of personal involvement, either direct or otherwise, there is a sufficient basis for dismissal of the claims. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581-584 (1st Cir. 1994).

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

In this case, the complaint barely contains allegations of Martínez's personal involvement in the alleged actions described therein. With respect to co-defendant Martínez, the only specific allegation of personal involvement is that he accompanied Peter Vargas-Vargas and "showed open demonstrations of solidarity and camaraderie" towards him during the hearings held in the criminal case against said co-defendant. Docket No. 2, at ¶ 9. Even if true, this allegation by itself is insufficient to show that Martínez was personally involved in the alleged deprivation of plaintiffs' constitutional rights.

Although there are allegations in the complaint to the effect that plaintiffs were told that the case against Peter Vargas-Vargas would not prosper due to lack of evidence and were harassed by cars trespassing into plaintiffs' properties during the pendency of the case against Peter Vargas-Vargas, there are no specific factual allegations linking Martínez to these events. Docket No. 2, at ¶¶ 7, 9-10.[2] Therefore, plaintiffs' Section 1983 claims against Martínez are DISMISSED WITH PREJUDICE.

As to co-defendant Figueroa, the complaint alleges that when Vargas-Torres, Vargas-Vargas and Pietri Vargas were incarcerated following a series of allegedly unjustified searches conducted on October 20, 2006, Figueroa isolated Vargas-Torres in a room and told him that if he told them where to find the illegal weapons the police officers were looking for, Figueroa would help Vargas-Torres with his case. Vargas-Torres answered that he had no knowledge of any illegal weapons, to which Figueroa replied that Vargas-Torres would spend the night in jail. The complaint also states

---

[2] Peter Vargas-Vargas, according to the complaint, was eventually convicted for aggression and incarcerated sometime in August or September 2007. Docket No. 2., at ¶11.

9

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

that Vargas-Torres, Vargas-Vargas and Pietri Vargas spent the night incarcerated at the "Mayaguez municipal jail" in a cell that allegedly had no working toilet, sink, bed or other facility where to rest. No food or water was offered to them, even though they were willing to buy water and Marylin Vargas-Vargas (who had arrived at the police station later) also volunteered to buy food. Moreover, a lawyer friend of the plaintiffs called the Mayagüez police station to inquire about the detained co-plaintiffs, and he was told that they were going to be released that same night. The release, however, took place the next day, at approximately 11:30 a.m. Id., at ¶¶ 25-28.

Although the court expresses no opinion as to whether plaintiffs will be able to prove these allegations, the same meet the minimum requirements to state a claim upon which relief can be granted. Therefore, the request for dismissal of the Section 1983 claims against Figueroa on lack of personal involvement grounds is DENIED (with the exception of the Section 1983 emotional distress or harm claims, discussed below).

As to Toledo-Dávila, the complaint does not allege that he was personally or directly involved in the alleged deprivation of plaintiffs' rights. Rather, plaintiffs' claims against Toledo-Dávila stem from his responsibility to monitor, evaluate, discipline and train police officers within his supervision. Id., at ¶¶ 35, 66.

It is well established that liability may not be predicated upon a theory of *respondeat superior*. Lipsett II v. University of Puerto Rico, 864 F.2d 881, 901-02 (1st Cir. 1988); Guzmán v. City of Cranston, 812 F.2d 24, 26 (1st Cir. 1987). A supervisor may only be held liable under Section 1983 on the basis of his own acts or omissions. Id. Supervisory liability can be grounded

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

on either the supervisor's direct participation in the unconstitutional conduct, or through conduct that amounts to condonation or tacit authorization. See Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999).[3] Absent direct participation, a supervisor may only be held liable where "(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was 'affirmatively link[ed]' to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence ... amounting to deliberate indifference.'" Hegarty v. Somerset County, 53 F.3d 1367, 1379-80 (1st Cir. 1995) (quoting Lipsett II, 864 F.2d at 902-03). A supervisor may also be liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it. Plaintiffs must show, however, that there is "an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials." Gutiérrez-Rodríguez, 882 F.2d at 561-62 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)). Plaintiff can establish a causal link "if there exists a known history of widespread abuse sufficient to alert a supervisor to ongoing violations." Id; see also Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 48 (1st Cir. 1999).

Moreover, "merely alleging that a supervisor failed to train his subordinates is patently insufficient to establish a [Section] 1983 claim against the supervisor." Figueroa-Flores v. Acevedo-Vilá, 491 F.Supp.2d 214, 226 (D.P.R. 2007); see also Rodríguez-Esteras v. Solivan-Díaz,

---

[3]The doctrine of supervisory liability hold that "a supervisor (defined loosely to encompass a wide range of officials who are themselves removed from the perpetration of the rights-violating behavior) may be liable under section 1983 if he formulates a policy or engages in a practice that leads to a civil rights violation committed by another." Camilo-Robles v. Hoyos, 151 F.3d 1, 6-7 (1st Cir. 1998).

11

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

266 F.Supp.2d 270 (D.P.R. 2003) (dismissing "failure to train" claim against police superintendent for plaintiffs' failure to plead minimum facts in support of such a claim in the complaint). "Allegations that a supervisor failed to train his subordinate officers and that he should be held liable for such failure, without identifying the factual underpinnings of such failure, nor identifying the causal nexus between the failed training and the subordinate's misconduct, are not enough to sustain a claim of liability under Section 1983." Rossi-Cortes v. Toledo-Rivera, ___ F.Supp.2d ___, 2008 WL 802267 (D.P.R. 2008) (citing Figueroa-Flores, 491 F.Supp.2d at 226). "'Boilerplate language' regarding a defendant's failure to train his subordinates is insufficient to sustain a Section 1983 claim." Rossi-Cortes, ___ F.Supp.2d ___, 2008 WL 802267 (citing Rodríguez-Esteras, 266 F.Supp.2d at 283).

Although the allegations in the complaint as to Toledo-Dávila are close to being boilerplate, plaintiffs allege that Toledo-Dávila was "aware, or should have been aware, about the bizarre, inappropriate, unprofessional, and illegal conduct demonstrated by the police officers assigned to the [D]ivision of [I]llegal [W]eapons in Mayagüez." Docket No. 2, at ¶35. They also allege, among other things, that Toledo-Dávila undertook, aided, and authorized the events that transpired according to the complaint. Docket No. 2, at ¶66. Thus, in essence the complaint alleges that Toledo-Dávila was deliberately indifferent to said events and caused them.

> To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk. This formulation correctly implies that deliberate indifference alone does not equate to supervisory liability; a suitor also must show causation... In other words, the plaintiff must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission.

12

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998) (citations omitted). Whether plaintiffs will be able to prove their allegations cannot be predicted at this juncture. For purposes of the motion to dismiss, however, the court concludes that the complaint contains sufficient allegations to survive such motion with respect to Toledo-Dávila. Therefore, the motion to dismiss the Section 1983 claims against Toledo-Dávila is DENIED (with the exception of the Section 1983 emotional distress or harm claims, discussed below).

### 2. Entitlement to qualified immunity.

"Government officials performing discretionary functions generally are shielded from liability for civil damages [under Section 1983] insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity specially protects public officials from the specter of damages liability for judgment calls made in a legally uncertain environment." Santana v. Calderón, 342 F.3d 18, 23 (1st Cir. 2003) (quoting Ryder v. United States, 515 U.S. 177, 185, 115 S.Ct. 2031 (1995)).

Based on Supreme Court precedent, the First Circuit employs a three-part test when determining if a public official is entitled to qualified immunity: (1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue. Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).

13

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

      The request for qualified immunity must be rejected if there is no issue as to the existence of a particular statutory or constitutional right which a reasonable public official should be aware of. The qualified immunity inquiry must start with the court ascertaining whether or not plaintiff has pled sufficient facts to denote violation of a constitutional right. Santana, 342 F.3d at 23; Concepción v. Zorrilla, 309 F.Supp.2d 201, 213 (D.P.R. 2004).

      Plaintiffs have raised sufficient allegations to defeat the qualified immunity defense at this stage of the proceedings. The court has already concluded that the facts alleged in the complaint could implicate plaintiffs' rights under the Fourth and Fourteenth Amendments to the Constitution. Furthermore, these rights were clearly established when the events alleged in the complaint occurred. See Camilo-Robles, 151 F.3d at 7. Finally, contrary to Toledo-Dávila's and Figueroa's allegations that "it was objectively reasonable for them to believe that their acts did not violate plaintiffs' constitutional rights" (see Docket No. 8, at 5), it is evident that any reasonable police officer understands, for instance, that performing unjustified or illegal searches, seizures, arrests or detentions constitutes a violation to a person's Fourth and Fourteenth Amendments constitutional rights. Thus, co-defendants Toledo-Dávila and Figueroa are not entitled to seek refuge under the qualified immunity doctrine and their request for dismissal of the Section 1983 claims asserted against them in their individual capacity on the basis of qualified immunity is DENIED.

      **3.    Dismissal of conspiracy claims under Section 1983**.

      Co-defendants Toledo–Dávila, Figueroa and Martínez also request dismissal of the Section 1983 conspiracy claim alleging that the complaint fails to establish the necessary elements of a

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

conspiracy claim pursuant to Section 1983, inasmuch it fails to allege how said co-defendants were involved in the alleged conspiration to violate plaintiffs' rights, as well as any specific fact indicating the existence of said conspiracy. Docket No. 8, at 13. Plaintiffs insist that the allegations of conspiracy in the complaint meet the fair notice pleading requirement of Fed.R.Civ.P. 8(2)(A) ("Rule 8(2)(A)") because the same provide defendants with due notice of plaintiffs' conspiracy cause of action. Plaintiffs also claim that said allegations "are not conclusory as they state the facts that show the existence and scope of the conspiracy, as much as may be portrayed at this early stage in the litigation where plaintiffs have not had the opportunity to engage in any degree of discovery." Docket No. 14, at 21.

"A civil rights conspiracy ... is 'a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages.'" Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988); Ramos Bonilla v. Vivoni del Valle, 336 F.Supp.2d 159, 170-71 (D.P.R. 2004). "To establish a conspiracy claim under [Section] 1983, plaintiff must 'prove not only a conspiratorial agreement but also an actual abridgment of some federally-secured right.'" Rivera-Carrero v. Rey-Hernandez, Civil No. 04-1925, 2006 WL 572349, at 2 (D.P.R. Macrh 7, 2006) (citing Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir.2001) (quoting Earle, 850 F.2d at 844)). Plaintiff carries the burden of identifying the specific constitutional right infringed. See Albright v. Oliver, 510 U.S. 266, 271 (1994). "[T]he plaintiff must allege 'specific facts showing an agreement and concerted action amongst the defendants to

15

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

plot, plan or conspire to carry out the alleged chain of events in order to deprive the plaintiff of a federally protected right.'" Ramos Bonilla, 336 F.Supp.2d at 170 (citing Tonkovich v. Kansas Board of Regents, 159 F.3d 504, 533 (10th Cir. 1998); Hunt v. Bennett 17 F.3d 1263 (10th Cir.1994) ("Conclusory allegations of conspiracy are insufficient to state a valid section 1983 claim.")).

In its pertinent part, the complaint avers as follows:

> Co-defendants acted in concert and common agreement to inflict the constitutional violations, to commit the unlawful acts and/or the lawful acts by unlawful means charged in this [c]omplaint. Defendants thus, conspired to and in fact deprived [p]laintiffs of the rights, privileges and immunities guaranteed by the laws of the Constitution of the United States, a cognizable claim under 42 U.S.C. § 1983.

Docket No. 2, ¶ 70.

A review of the complaint shows that plaintiffs fail to state a valid claim of conspiracy against Martínez pursuant to Section 1983. Other than the conclusory allegations contained in paragraph 70 of the complaint (quoted above) regarding the existence of an alleged conspiracy between defendants, with respect to Martínez the complaint lacks the necessary factual allegations to establish the material elements of a conspiracy to violate plaintiffs' civil rights. "Merely asserting that a conspiracy existed is insufficient to withstand defendants' motion to dismiss." Rivera-Carrero, 2006 WL 572349, at 2; see also Ramos Bonilla, 336 F.Supp.2d at 170.

Therefore, the Section 1983 conspiracy claims against Martínez are DISMISSED WITH PREJUDICE. However, Figueroa's and Toledo-Dávila's request for dismissal of such claims is DENIED at this stage of the proceedings in light of the allegations made regarding the events of October 20, 2006.

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

  **4.**  **Dismissal of Section 1983 claims of "emotional distress" or "emotional damages".**

The complaint also includes a cause of action under Section 1983 for intentional infliction of moral and "emotional distress." See Docket No. 42, ¶ 42 ("Defendants' illegal search, emotional, moral and physical abuse of plaintiffs, committed intentionally, either with malice or without malice, deprived plaintiffs of their right to be free of unreasonable searches and seizures as guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States and protected under 42 U.S.C. § 1983"). Toledo-Dávila, Figueroa and Martínez assert that said claims fail to state a cause of action for intentional infliction of emotional distress because there are no allegations that their conduct was extreme and outrageous so as to cause said distress. Docket No. 8, at 13-14. Plaintiffs, on the other hand, contend that their claim for "emotional damages" should not be dismissed because it complies with the "fair notice" requirement of Rule 8(2)(A). Docket No. 14, at 21-22.

The court agrees with defendants' contention that the Section 1983 claims for emotional harm should be dismissed, albeit on different grounds. Claims for humiliation, mental anguish, stress, emotional harm, and intentional infliction of emotional distress are not cognizable under Section 1983 because said section does not impose liability for violations of duties of care arising out of tort law:

> "Section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties of care arising out of tort law," Baker v. McCollan, 443 U.S. at 146. As such, plaintiffs' claims for humiliation, mental anguish, stress and

17

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

> emotional harm do not by themselves state a cognizable [Section] 1983 claim. The counts for intentional infliction of emotional distress are not actionable under [Section] 1983, but must be treated as pendent state claims.

Sergio v. Doe, 769 F.Supp. 164, 166-67 (E.D.Pa. 1991) (footnote omitted); see also Horne v. Farrell, 560 F.Supp. 219, 225 (M.D.Pa.1983) ("Section 1983 protects persons from deprivation of federally protected rights .... The claims of false imprisonment, abuse of process, or intentional infliction of emotional distress are based upon Pennsylvania law. No federally protected rights are allegedly violated."). Therefore, the Section 1983 claims for emotional harm asserted against Toledo-Dávila, Figueroa and Martínez are hereby DISMISSED WITH PREJUDICE.

### 5. Dismissal of supplemental jurisdiction claims.

Plaintiffs invoke the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for her claims arising under "the Constitution and laws of the Commonwealth of Puerto Rico, including Articles 1802 and 1803 of the Puerto Rico Civil Code." Docket No. 2, at 2-3, and ¶ 74. "Pendent jurisdiction exists whenever there is a claim arising under the Constitution, the Laws of the United States, and treaties made under their authority and the relationship between that claim and the state claim can be found to constitute, but one constitutional case." Rivera-Sánchez v. Autoridad de Energía Eléctrica, 360 F.Supp.2d 302, 318 (D.P.R. 2005). "The state claims must be linked to the federal claim by a 'common nucleus of operative facts', and must be sufficiently substantial to confer federal court jurisdiction." Id. at 319 (citing United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138 (1966); Confederación Laborista De Puerto Rico v. Cervecería India, Inc., 607 F.Supp. 1077, 1081 (D. Puerto Rico 1985).

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

"[A] federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims." Rivera-Sánchez, 360 F.Supp.2d at 319 (citing Gibbs, 383 U.S. at 726). "When the balance of these factors indicates a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Rivera-Sánchez, 360 F.Supp.2d at 319 (citing Martínez v. Colón, 54 F.3d 980, 990 (1st Cir. 1995)).

"The preferred approach is pragmatic and case-specific. Thus, in 'an appropriate situation, a federal court may retain jurisdiction over state-law claims notwithstanding the early demise of all foundational federal claims.'" Rivera-Sánchez, 360 F.Supp.2d at 319 (citing Rodríguez v. Doral Mortage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995); Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 257 (1st Cir. 1996)).

The exercise of pendent jurisdiction is discretionary. In view of the fact that plaintiffs' federal claims against Martínez do not survive said co-defendant's request for dismissal, the court will abstain from exercising supplemental jurisdiction over the associated Commonwealth claims against him. Hence, the pendent state law claims against Martínez are DISMISSED. However, inasmuch as several of plaintiffs' federal claims against Figueroa and Toledo-Dávila survive their request for dismissal, and upon an assessment of judicial economy and fairness to litigants, the court will not dismiss, at this moment, plaintiffs' Commonwealth claims against Figueroa and Toledo-

Case 3:07-cv-02002-FAB-MEL   Document 34   Filed 04/30/08   Page 20 of 20

Vargas-Torres, et al., v. Toledo-Dávila, et al.
Civil No. 07-2002 (FAB/MEL)
Opinion and Order

Dávila. Therefore, Martínez's request for dismissal of the pendent state law claims is GRANTED, while Toledo-Dávila's and Figueroa's is DENIED.[4]

### IV. CONCLUSION

In view of the foregoing, Toledo-Dávila's, Figeroa's and Martínez motion to dismiss (Docket No. 8) is GRANTED IN PART and DENIED IN PART. In particular:

(1) all claims, under federal and state law, against Martínez are DISMISSED WITH PREJUDICE;

(2) the request to dismiss plaintiffs' Section 1983 claims against Toledo-Dávila's and Figueroa's is DENIED with the exception that plaintiffs' Section 1983 "emotional distress" or "emotional harm" claims against Toledo-Dávila and Figueroa are DISMISSED WITH PREJUDICE;

(3) the request to dismiss all pendent state law claims against Toledo-Dávila and Figueroa is DENIED.

SO ORDERED.

In San Juan, Puerto Rico, this 30th day of April, 2008.

s/Marcos E. López
UNITED STATES MAGISTRATE JUDGE

---

[4] The court expresses no opinion as to whether plaintiffs may pursue the state law claims against Martínez in the courts of the Commonwealth of Puerto Rico, as well as to the validity, if any, of those claims in the local forum.